## Commonwealth v. Clark's Ferry Bridge Company

*William A. Schnader*, Attorney General, and *John A. Moss*, Deputy Attorney General, for Commonwealth.

*Snyder, Miller, Hull & Hull*, for defendant.

Fox, J., April 30, 1934.—This is an action in assumpsit.

A stipulation to try without a jury was filed under the provisions of the Act of April 22, 1874, P. L. 109.

The plaintiff filed its statement of claim for the sum of $45,950, with interest from July 29, 1932, averring in substance that the Public Service Commission of Pennsylvania by a report filed on July 8, 1926, found that the rates complained against were unjust and unreasonable, and on or about the same date ordered the defendant to file and publish a new tariff, providing therein rates and tolls not to exceed $85,905, effective July 1, 1926, from which order an appeal was taken by the defendant to the Superior Court but thereafter discontinued; that the defendant then filed its tariff no. 3, effective March 1, 1927, reducing the rates contained in tariff no. 2; that the gross revenue received by the company from March 1, 1927, to December 31, 1927, was $111,841.38, and for the year ending December 31, 1928, $135,449.76, which amounts were greatly in excess of the sum of $85,905; that the defendant did not revise its tariff no 3, but continued to collect tolls at the rates established in no. 3, in violation of the order of the said commission; that from January 1, 1929, to June 20, 1929, the company collected gross revenue of $72,477.11; that on or about April 22, 1929, the Commercial and Industrial League of Harrisburg, Inc., lodged a complaint with the commission against the defendant's tariff no. 3, on the ground that the rates prescribed therein were unjust and unreasonable, which the defendant denied, and after one hearing had upon the said complaints the defendant filed tariff no. 4, effective June 1, 1929, thereby reducing certain of its rates; that during the period beginning July 1, 1929, and ending December 31, 1929, on tariff no. 4 it collected gross revenues of $69,061.82, which said revenues were

greatly in excess of the amount permitted by the order of the Public Service Commission dated June 8, 1926; that the defendant did not revise the tariff no. 4 but continued to collect tolls at the rates established therein during the year ending December 31, 1930, and collected a gross revenue of $130,394.20; that during the year ending December 31, 1931, the gross revenues collected under the rates contained in tariff no. 4 amounted to $137,287.99; that the defendant continued to collect tolls at the rates established in tariff no. 4 until some time subsequent to February 2, 1932; that on February 2, 1932, the commission filed a report and ordered the defendant to file a new tariff calculated to produce annual revenue not in excess of $84,125; that this order superseded the order of the commission of June 8, 1926; and that the defendant by reason of the above violations of the provisions of The Public Service Company Law and the order of the commission under article VI, secs. 35 and 36, of The Public Service Company Law of July 26, 1913, P. L. 1374, as amended by the Act of June 3, 1915, P. L. 779, must forfeit and pay to the Commonwealth the sum of $50 for each and every day during the period of said violations, to wit, from July 26, 1929, to February 2, 1932, or $45,950, with interest from July 29, 1932.

The affidavit of defense admits most of the averments of the plaintiff's statement, but denies that it violated the law or the orders, rules, and regulations of the Public Service Commission and avers that during the years (part of) 1929, 1930, 1931, and (part of) 1932, for which time the penalty is claimed, the revenues were collected according to the tolls fixed by tariffs nos. 4 and 5 and prior to that time under nos. 2 and 3; that (under the heading of new matter) at the request of the commission, the defendant permitted a thorough examination and audit of its books by accountants employed by the commission, and that on March 11, 1930, a comprehensive and detailed report was made, and no change was made or suggested by the commission in the tariff no. 5, which had made numerous decreases in the rates theretofore charged by the defendant and made no increases.

Testimony was taken which consists entirely of an introduction of exhibits from which we have found our facts, there being little or no dispute as to them.

The Public Service Company Law is a long one, and in article II it defines the duties of public service companies in a general way, leaving it to the commission to determine what specific duties it shall impose upon a particular company in a particular case. Inter alia, the said act, in article II, sec. 1, provides: "It shall be the duty of every public service company . . . (b) To render and furnish all such service at prices, charges, rates, tolls, fares, or compensation that shall be just and reasonable, and in conformity with such reasonable regulations or orders as may be made by the commission."

Article VI, sec. 35, of the said act, as amended, provides: "If any public service company shall violate any of the provisions of this act . . . ; or shall fail, omit, neglect, or refuse, to perform any duty enjoined upon it by this act; or shall fail, omit, neglect, or refuse to obey, observe, and comply with any final direction, requirement, determination, or order made by the commission; . . . shall forfeit and pay to the Commonwealth of Pennsylvania the sum of fifty dollars; to be recovered by an action of assumpsit, instituted in the name of the Commonwealth of Pennsylvania, in the court of common pleas of Dauphin County. . . ."

The order of the commission made June 8, 1926, provided that the company should: "(1) Cease and desist from collecting toll at the rates contained in its tariff, P. S. C. Pa. No. 2, on or after June 30, 1926; (2) file, post, and publish tariff schedule which will provide toll rates designed to yield annual gross

revenue not in excess of $85,905; and (3) submit therewith the traffic data employed in arriving at the rates of toll proposed."

The said order was not, because of an appeal, in force and effect until March 1, 1927, and after the latter date the company did not at any time collect tolls under tariff no. 2. When the company filed its new tariff no. 3, it submitted to the commission traffic data designed not to yield a gross revenue of over $85,905, and the bureau notified counsel that the tariff was satisfactory and was in compliance with the order, whereupon it was presented to the commission on February 24, 1927, and accepted for filing as being in compliance with the said order of the commission of June 8, 1926. When the complaint of the Commercial and Industrial League of Harrisburg, Inc., was lodged on April 22, 1929, the commission filed an interim report in which it found that the company's tariff had been filed in compliance with the order of the commission, which interim report included the gross revenue of the company for the years 1926, 1927, and 1928, and the commission also found that because of changing highway conditions, detours, bridge and highway reconstructions, and other causes, it was exceedingly difficult to make any accurate estimate of expectable revenues. The commission then instituted a proceeding of its own to determine whether the rates then charged were reasonable.

After the tariffs are filed, posted, and published and the rates become effective, they are deemed under the act to be the legal rates, and the burden is on anyone complaining to show that they are unjust or unreasonable; until that is done, they are deemed prima facie just and reasonable, and when a rate has been fixed by the commission the said rate cannot be changed without the permission of the commission so to do, and when the rate charged is the one fixed by the tariff it is a complete defense to an action for a penalty: Article VI, sec. 41. If subsequently they are attacked and held to be unreasonable, the company will be required to make reparation but cannot be subjected to a penalty, because at the time the rates were charged and collected they were just and reasonable in contemplation of law. We are of the opinion that a penalty cannot be imposed and collected unless and until the commission has specified the exact rate to be charged, and the charging of any greater rate thereafter would have been a violation of the law.

The Commonwealth is now attempting to penalize the defendant, during the time that the commission found that there was no violation of the order of January 14, 1932, to July 2, 1932, for filing tariffs which yielded greater revenues than the commission fixed, although the rate adopted after the commission's experts made the investigation and examination and report to the commission and the rate then permitted by the commission also yielded greater revenue than contemplated. If it was impossible for the experts and the commission to fix a rate that would yield exactly or approximately the amount of $85,905, it was equally so for the defendant.

From our findings of fact, we conclude that the defendant, during the time for which the penalty is claimed, did all things which it reasonably could do to comply with the commission's request and requirements and we are unable to conclude, as requested by the plaintiff, that the defendant acted, during the period for which the penalty is claimed, unlawfully or in violation of an order of the commission.

And now, April 30, 1934, we find that the plaintiff is not entitled to recover from the defendant any sum or amount as a penalty. Verdict for the defendant.

From Homer L. Kreider, Harrisburg, Pa.